I think this is the worst opinion I've ever seen. This one by the board. It's outrageous. It doesn't know what's in the record. It doesn't discuss what's in the record. It misses the petitioner filed motion to reopen. The INS filed a two-page, deny this, this is personal circumstances. Within a few days, petitioner filed another motion to reopen, supplementing and replying to the INS. And that's a page recorded at 158 to 167. It specifically discusses in so many terms imputed political opinion. It cites the Rodriguez Roman. It cites other cases. It explicitly states that this petitioner will be persecuted for her illegal departure from China if she's returned. And there is a showing of a material change in circumstances in China at a lot of different levels. One level, again not discussed, is the 2000 report by the Department of State at AR-169. It talks about material changes in China since 1998. Let me ask you, so what do you want us to do? You tell us it's a terrible decision, a lousy decision, the worst decision you've ever seen. It is. So what do you want us to do? I first hope that the Court would allow me to go before the IJ and have an asylum hearing. I don't know that the Court can do anything. Wouldn't we have to send it back to the BIA first? I don't think so. Why not? Yeah, don't they have to decide whether to reopen or not? Well, it's a prima facie showing that there's a valid claim here, and they erred, the BIA erred by saying that there isn't. A prima facie one. Wait a minute. Your argument is that they didn't consider certain documentary evidence that you gave them to show changed circumstances. They totally missed it. Okay. So suppose we agree with you. Yeah. We can't tell here whether they consider this or not. So what do we do? Don't we send it back to the BIA and say, take a look at this and tell us what, you know, make a ruling on it, consider this, and then decide whether or not to grant reopening. Isn't that what should happen? Your Honor, the showing is so clear, and they missed the record so completely, I don't, you know, I don't know that that's what should happen. We can't substitute ourselves for the BIA. But if the BIA has erred, they don't have a right to err so completely. They don't have a right to err so fatally. Well, if they erred by not considering the evidence that was submitted by Ms. Jang on changed country conditions, okay, let's say they write an opinion and they say, hey, we're not going to reopen because their only change of personal circumstance, the fear of this organization because of personal circumstance, but there's no change in the country. And they ignore the evidence from, that was submitted for whatever weight it should have, from this Dr. Rojek that says things have changed and there's a strike hard policy, there's a stay in prison, you know, work in prison policy. Things have changed, he basically says, and things are worse. And as a result, there's more likelihood, he says, that she'll be put in prison when she goes back, and there's more likelihood she'd be there longer. Exactly. So that's what he says. And the BIA writes their short opinion as if he hadn't said anything at all about China. So if we conclude that, and maybe the government has an answer to that, but if we conclude that what I just said is basically what happened, then don't we just have to send it back to the BIA and say, you did not address the evidence of changed country conditions. It's your responsibility to address whether, address this evidence and to make a decision in the first instance if it's material and if it's a material change, and then we review that. And how can we jump ahead of that? Unless your decision following up on that is that the BIA is merely a pass-through. It doesn't make any difference what they do. Anytime that there is a decision that is one that is not, obviously if there's a decision one way or the other, then either for the government or for her, then it would be always necessary to send it back to the ALJ without, I mean, what do we need the BIA for? The other thing is this. If there is a jurisdictional right to go to the BIA, would we then have the authority, in contrast to what we heard, the authority to send it back to the ALJ as if the BIA didn't even exist? I honestly, with the Court, this is my second motionary open on an asylum case. The first one was on Ms. Ng's first case. That was on a CAT claim, right? It was on a Lazada type of showing. I thought about the remedy. I hoped the remedy was a return at a minimum to the EOIR. I was going to ask the Court to grant her withholding based on the evidence before the Court. I don't know that the Court can do that. I do have a checklist of items that weren't reviewed in the decision. There's an affidavit of Yuan Li Xin, AR-40. Well, they don't have, you know, this also interests me. A decision-maker doesn't have to list every piece of evidence that you submit. I mean, when I was a district court judge and even as an appellate court judge, I don't list every little argument and piece of evidence. But nothing was listed, Your Honor. Nothing was listed. That's just the one of like eight things. There's Rujek's affidavit. There's the article by the New York Times from 2000. Well, if they send it back to the BIA and then they address every one of those issues, the decision is the same. All they say is we've addressed it, but our decision is the same. Can't they get away with that? And what would be the benefit of sending it back to them just to say, well, we considered this, we considered that, we considered this? So technically, we have now or we're just telling you we did everything we were supposed to do. So we get it back in the same manner. I mean, we just have a list of items that they considered which you would have preferred they do consider. The absence of them doesn't mean they didn't consider it, right? Well, it does, Your Honor, because they say that Ms. Zing didn't show a material change in circumstances in the country of China. In fact, they claim that she didn't even allege it. Right. That's great. Isn't that the problem here, when they say she does not allege changed circumstances in China? And the government actually goes along with that. Okay. Well, we're sort of past. I think some of us at least are past that. The BIA decision says she didn't allege it. We can see she alleged it. All right. All right. But still, where that leaves us is we can't the Supreme Court doesn't let us become a super BIA. You know, if there's something they didn't do, don't we have to just send it back and say, you address, address the evidence, and decide. Maybe they'll address it and decide there is a change of country circumstance and then reopen. All this thing is all preliminary as to whether they reopen, right, before you get to the merits of whether she's entitled to. I guess I just hope that the prima facie showing is so clear that the court could just send us back. We're going to have to go back to the EIR anyway. Is there any authority that says if there's a prima facie showing of entitlement to asylum now and the board hadn't reopened because they didn't address the evidence that we can grant asylum? He's probably focusing too much, Your Honor, on trying to see if the court would be as far as the court is now. I can't answer that question. I'm sorry. Because I think what your brief was focused on was they didn't address this and they should have addressed it. Maybe you should reserve some time after the government clarifies. I'll reserve a minute. Thank you. Okay. We'll hear from Ms. Wernery. Hard day for the government here today. Thank you, Your Honors. Let me point out what I think may have happened in this case, just to be perfectly candid with the court. Ms. Dang filed a motion to reopen. The INS filed an opposition. And then she filed a reply. However, that original motion to reopen was rejected for failure to pay the fee. So those three documents kind of went by the wayside, I'm afraid. Then she refiled the motion to reopen with paying the fee, and that document came later. So when you look at the record, things are out of order than what they usually are. So Ms. Dang's reply brief, which is the only document in which she raised any sort of change country conditions apart from snakeheads, came – was in the wrong place in the record. And I think it's possible that that was, in fact, missed by the board. Well, then under her – Why don't you just stipulate this? Send this back to the board. Because, Your Honor, I have to be frank. I missed it as well until – when I briefed the case, until I prepared for argument. Well, do you – does the government today agree that pursuant to our Aroval decision or other authority that we should send this back for the board to address the contentions? I haven't had an opportunity to speak with a client about that, and so I think I need to do that before – before I represent that. We don't need to stipulate. I mean, do you – then state it differently. If it's correct that she did allege change country conditions, and if the board's expressed decision says she didn't make that allegation, then can you give me any precedent that would say that we should not remand it? No, Your Honor. And the government's position would be that it – that what should happen is that it should be remanded for the board to address that issue, not for this Court to reach that issue in any way. What about the argument that's made by Petitioner, who's, you know, going up and down this system, and that based on the evidence, we should just get right to the merits and say whether she's entitled to withholding, or do we – are we allowed to do that? No, Your Honor. And the Supreme Court last year was clear about that in Ventura v. INS, that if the agency has not reached an issue, then the court cannot reach it. The remedy is to send it back to the agency to address the issue. And to be fair to the board in this case, Ms. Zins' motion to reopen, entire main motion to reopen, was all about the snakeheads and the persecution by the snakeheads. All of the evidence and support was about snakeheads. And it was not until her reply briefed after the INS raised, oh, that's just personal circumstance changes, that that even came up. Well, mistakes happen. Yes. All right. I've heard enough. I think we've heard enough. Okay. Thank you, Your Honor. We appreciate your candor. I think we've heard enough, unless you have something to add. I have nothing to add. Okay. We appreciate Ms. Zins appearing before us today. And we thank counsel on both sides. Okay. Well, we now have two related cases scheduled. It appears they're set to be argued separately. They have some different issues. So the first case we'll call is Minotti v. City of Seattle. Let's see. We have Mr. Loefsens here. Good morning.
judges: Gould, Paez, Silver